UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KAREN M. SUOZZO,**

    **Plaintiff,**

v.                                            Case No.: 8:05-CV-1687-T-EAJ

**LINDA S. MCMAHON,**[1]
**Commissioner of Social Security,**

    **Defendant.**
_____/

**<u>FINAL ORDER</u>**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Section 405(g) <u>et</u> <u>seq.</u>, to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. <u>See</u> 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Linda S. McMahon should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Dkt. 20).

evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 24, 2002, claiming an onset of disability beginning July 9, 2001. (T 99-101) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision issued on March 25, 2005. (T 22-31) The Appeals Council twice declined to review the ALJ's decision (T 7-13), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she was not disabled at any time through the ALJ's decision on March 25, 2005. (T 30-31) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, 49 years old at the time of the administrative hearing on July 20, 2004, has a high school education and served in the Coast Guard for approximately two years post graduation. (T 49-

50, 99) Plaintiff has past relevant work as an office manager, post office courier/clerk, carpenter, and waitress. (T 72, 115-122, 157) Plaintiff asserts that a combination of impairments including chronic pain, arm and shoulder problems, arthritis, fibromyalgia, and short-term memory problems have rendered her unable to work since July 9, 2001. (T 51-59, 124-132, 133-136)

Following the administrative hearing, the ALJ found that Plaintiff suffers from fibromyalgia, asthma, cervical and lumbar facet disease, depression, panic disorder, and cognitive disorder. (T 23, 30) The ALJ determined that the above impairments are severe; however, the ALJ concluded that Plaintiff's impairments or combination of impairments do not meet or medially equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (T 26, 30) The ALJ held that Plaintiff could not perform her past relevant work, but that she could perform a limited range of sedentary work activity with a sit/stand option.[3] (T 28-29, 30-31) Specifically, the ALJ noted that Plaintiff must never climb ladders, ropes, or scaffolds and must avoid exposure to moving machinery, unprotected heights, chemicals, dusts, fumes, and gases. (T 28, 30) He also limited her to performing simple, repetitive tasks with a minimal stress level, and further found that Plaintiff can concentrate for no more than one hour at a time followed by a period of at least five minutes during which concentration requirements are reduced. (Id.) Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as change account clerk, supervisor systems

---

[3] Sedentary work, defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), involves the lifting of not more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.

monitor, and scale attendant.[4] (T 31) In reaching the conclusion that Plaintiff had not been under a "disability" as defined by the Act at any time through the date of the decision, the ALJ held that Plaintiff's statements regarding her limitations were not wholly credible. (T 30)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff's seven-page memorandum of law neither clearly set forth the issues in this appeal nor delineates her arguments regarding how the Commissioner allegedly erred. The court will address only those issues which appear to be developed legally and factually; "shotgun" type of arguments will not be addressed as it is incumbent on Plaintiff (through her designated attorney) to establish her arguments with specificity, not in a conclusory manner.

Plaintiff argues that the Commissioner erred by: (1) improperly evaluating Plaintiff's subjective complaints of pain; and (2) giving improper weight to the opinions of various physicians regarding Plaintiff's mental work-related limitations (Dkt. 30 at 4-6). Defendant maintains that the ALJ's decision is supported by substantial evidence and that the ALJ evaluated Plaintiff's claims under proper legal standards (Dkt. 33).

**A.** Plaintiff claims that the ALJ did not give proper weight to Plaintiff's pain testimony because the ALJ failed to provide specific reasons as to why he found Plaintiff's subjective complaints not credible (Dkt. 30 at 6). Plaintiff further argues that the ALJ erred by mis-characterizing Plaintiff's testimony regarding her need to use a wheelchair (Id. at 4). Finally, Plaintiff

---

[4] Plaintiff was found to meet the disability insured status requirements, however, through March 31, 2005. (T 22, 30)

contends that she would not have subjected herself to potentially risky cervical median branch block procedures performed by Thanh T. Le, M.D. ("Dr. Le") had she not been experiencing the pain and discomfort about which she testified (Id.).

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

After evaluating the medical evidence and Plaintiff's testimony, the ALJ concluded in his findings that "claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (T 30) Plaintiff argues that this one-sentence finding was improper because an adjudicator's decision on credibility must contain specific reasons for the finding which are supported by the evidence in the record (Dkt. 30 at 6). Plaintiff further contends that the ALJ did not properly consider Dr. Le's definition of fibromyalgia which clearly states that a person suffering from fibromyalgia experiences pain (Id.)

While it is true that a credibility determination cannot consist of a broad rejection of a claimant's complaints of pain, see Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted), this is not the case here. In his decision, the ALJ discussed specific reasons for rejecting

5

Plaintiff's testimony as to the intensity of her symptoms and the effect of her impairments. After stating that he carefully considered Plaintiff's complaints of pain (T 26), the ALJ went on to evaluate Plaintiff's testimony in light of the medical evidence in the record. The ALJ assessed the evidence regarding Plaintiff's shoulder problems, breathing and asthma problems, left foot pain, and mental impairments. (T 27-28) For example, the ALJ noted that Plaintiff "does have some restrictions with her upper extremities; however, there were no clinical or laboratory findings to support Dr. Mirabello's opinion to the extent that he alleged." (T 27) The ALJ also recognized that while Plaintiff continued to report shortness of breath and chest pain through 2002 and 2003, chest x-rays taken in 2003 "continued to show no abnormalities and Dr. Jain assessed that the claimant's asthma was overall stable." (Id.)

Further, the ALJ appropriately evaluated Plaintiff's restrictions imposed by her fibromyalgia. Specifically, the ALJ found that Plaintiff's fibromyalgia was a severe impairment based on the requirements in the regulations. (T 30) Thus, by definition, Plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, the ALJ discredited Plaintiff's subjective complaints of pain based on a lack of objective medical evidence supporting those complaints. (T 26-28) In summarizing his findings regarding Plaintiff's subjective complaints of pain in light of the medical evidence in the record, the ALJ stated:

> Finally, I found that the claimant was generally credible. However, the extents [sic] of the limitations described in her testimony were not fully supported by the medical evidence of record. For example, the claimant testified to significant confusion, memory loss and inability to concentrate. However, in Exhibit 27F on July 8, 2004, Dr. Le described the claimant's memory and concentration as "intact," and the neuropsychological testing at Exhibit 25F describes good working memory. Also, the claimant attended the hearing in a wheelchair and yet, Dr. Le described the claimant as walking albeit with a cane. . . . According to [Plaintiff's husband], the claimant is unable to take care of herself or home due to significant memory problems.

6

> Therefore, to the extent that the claimant contends that she would be rendered by her subjective complaints completely incapable of performing even some sedentary work, I found those contention [sic] to be less than entirely credible when compared to the record as a whole (Social Security Ruling 96-3P and 96-7P).

(T 28) Further, the ALJ recognized limitations on Plaintiff's physical ability to do basic work activities by requiring a sit/stand option at Plaintiff's discretion and limiting her exposure to physical requirements of potential jobs. (T 30)

The ALJ's discussion in the body of the decision of his reasons for rejecting Plaintiff's pain testimony was "enough to enable [the court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole," including the pain she experienced from fibromyalgia, and therefore, the ALJ's one-sentence summary regarding Plaintiff's credibility was not in error. Foote, 67 F.3d at 1562 (internal quotation marks and citation omitted).

Plaintiff also alleges that the ALJ improperly assessed Plaintiff's credibility concerning her need to use a wheelchair (Dkt. 30 at 4-5). Plaintiff argues that Dr. Le's notation in his April 22, 2004 report that Plaintiff was in the process of obtaining a motorized scooter (T 438) and Plaintiff's testimony that she had been using the wheelchair "maybe six months" demonstrates that the ALJ improperly relied on Dr. Le's statement that Plaintiff was "walking albeit with a cane." (T 28) At the hearing, the ALJ and Plaintiff's attorney questioned Plaintiff as to her use of the cane and the motorized wheelchair. (T 68-70) Plaintiff testified that the percentage of time using each was approximately 60/40,[5] although when questioned by her attorney, Plaintiff responded that the longest distance she could walk with the cane was twenty feet. (T 68, 70) In his decision, the ALJ noted that while a December 15, 2003 examination of Plaintiff's right foot revealed some tenderness and

---

[5] The record is unclear as to Plaintiff's testimony regarding which percentage applied to her use of the wheelchair versus the cane. (T 68-69)

7

palpitation, there was no pain upon range of motion, and no edema or signs of infection. (T 23, 455) Also, a November 2003 x-ray of Plaintiff's right foot revealed no obvious fractures or dislocations. (T 23, 454) The ALJ also discussed Plaintiff's December 2003 independent examination at the Florida Arthritis and Osteoporosis Center, where an examination of the gait, hands, writs, elbows, shoulders, hips, knees, ankles, and feet were all normal. (T 24, 385-86) Additionally, there is no indication in Plaintiff's medical records that the motorized scooter was prescribed by Plaintiff's physicians. Therefore, the ALJ's credibility assessment of Plaintiff's testimony regarding her need to use a wheelchair is supported by substantial evidence. However, even if the ALJ had relied in error on Dr. Le's report that Plaintiff was walking with a cane, this reliance would not detract from the ALJ's overall findings regarding Plaintiff's credibility due to the other substantial evidence supporting the ALJ's findings.

  Finally, Plaintiff argues that it was highly unlikely that she would undergo cervical median branch block procedures and other risky pain blocking procedures on her neck and spine if she was not experiencing the level of pain she alleged (Dkt. 30 at 3-4). In his opinion, the ALJ discussed the fact that Dr. Le had performed median branch blocks on Plaintiff because of her decreased range of motion of the cervical and lumbar spine. (T 24) The ALJ noted that although Plaintiff reported to Dr. Le in April 2004 that her low back pain and right shoulder pain persisted, she also reported that medication had controlled her pain "fairly well." (Id.) Therefore, the record reflects that the ALJ did consider the fact that Plaintiff underwent the branch block procedures for pain management purposes in conjunction with her testimony regarding her subjective complaints of pain.

  Plaintiff has not shown that the ALJ's reasons for rejecting her pain testimony are not supported by the record as a whole, were misinterpreted, or were incorrect. Further, the ALJ cited

to the applicable pain standard. (T 26); cf. Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (ALJ's findings and discussion made clear that the ALJ applied the three-part pain standard even though ALJ did not specifically cite or refer to the language of the three-part test). The court therefore concludes the ALJ's assessment of Plaintiff's pain testimony was based on substantial evidence. See generally Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

**B.** Plaintiff also claims that the ALJ assigned improper weight to the opinions of various physicians regarding Plaintiff's mental work-related limitations (Dkt. 30 at 5-6). Plaintiff argues that the ALJ improperly credited the opinion of T. Wayne Conger, Ph.D. ("Dr. Conger") and improperly disregarded the opinions of Leo V. Yason, M.D. ("Dr. Yason"), and Ernest J. Bordini, Ph.D. ("Dr. Bordini"). Specifically, Plaintiff alleges that the opinion of Dr. Conger, a non-examining state agency psychologist, should have been disregarded because Dr. Conger did not have a treating relationship with Plaintiff and the ALJ rejected the opinions of the state agency medical consultants concerning Plaintiff's physical limitations for that same reason (Dkt. 30 at 5). Additionally, Plaintiff argues that Dr. Yason's and Dr. Bordini's opinions should have been given more weight than Dr. Conger's opinion because Drs. Yason and Bordini "met and evaluated the claimant on three separate ocassions." (Id.)

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). The opinions of non-examining, reviewing physicians standing alone do not constitute substantial evidence, and are entitled to little

9

weight when contrary to those of the examining physicians. Sharfarz, 825 F.2d at 280 (citation omitted).

Neither Dr. Conger, Dr. Yason, nor Dr. Bordini qualified as a "treating physician." Dr. Conger was a non-examining, non-treating state agency mental health consultant, while Dr. Bordini performed a one-time evaluation of Plaintiff for workers' compensation purposes on referral from Bina Jain, M.D. ("Dr. Jain"), Plaintiff's pulmonary specialist. (T 25, 389) Similarly, the record reflects that Dr. Yason, a state agency consulting physician, saw Plaintiff on only two occasions in January and February 2003, diagnosing Plaintiff with major depression (recurrent) and panic disorder without agoraphobia, and prescribing the medications Prozac and Klonopin. (T 377-79) It is clear that the opinions of a one-time examiner do not require the same type of deference as a treating physician, and likewise, the fact that Dr. Yason saw Plaintiff on two occasions does not transform his status into that of a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (citation omitted); see, e.g., George v. Bowen, 692 F. Supp. 215, 219 (S.D.N.Y. 1988) (physician who treated claimant on only two occasions was not a "treating physician"). Therefore, the ALJ was not required to specifically address the findings of any of these state agency medical consultants as long as their findings were generally consistent with those of the ALJ. See Ridge v. Apfel, 15 F. Supp. 2d 1086, 1089 (D. Kan. 1998) (discussing two unpublished Tenth Circuit decisions regarding whether the ALJ is required to discuss the opinion of a state agency's consultant in a decision denying benefits).

The ALJ properly disregarded the opinions of the state agency medical consultants regarding Plaintiff's physical limitations because the opinions were not consistent with the medical evidence of record. (T 27); Sharfarz, 825 F. 2d at 280 (citation omitted). Also, the ALJ did not err in assigning

substantial weight to Dr. Conger's assessment of Plaintiff's mental limitations because Dr. Conger's opinion "was most consistent with the medical evidence of record." (T 28) While the ALJ did not expressly state why he did not credit Dr. Yason's and Dr. Bordini's evaluations to the same extent as Dr. Conger's, the ALJ did not ignore Dr. Yason's and Dr. Bordini's opinions, as the ALJ discussed both in his decision.[6] (T 25) Furthermore, a failure to specifically assign weight to either Dr. Yason's or Dr. Bordini's opinion was not in error as both Drs. Yason and Bordini provided only diagnoses and noted no specific work-related restrictions in their reports. (T 377-79, 431) Finally, the ALJ obviously reviewed Dr. Yason's reports because he mentioned in the opinion that Dr. Yason's assessment of Plaintiff was "major depression and panic disorder without agoraphobia." (T 25) Likewise, the ALJ referred to Dr. Bordini's report at the hearing and therefore, had reviewed it prior. (T 56) In sum, the ALJ appropriately reviewed the medical evidence regarding Plaintiff's mental limitations in accordance with Social Security Ruling 96-6p. The ALJ found that depression, panic disorder, and cognitive disorder were among Plaintiff's severe impairments. (T 30) In finding that Plaintiff could not return to her past relevant work but could perform other work, the ALJ properly exercised his fact-finding role in weighing and resolving any inconsistencies in the medical evidence. Plaintiff has not demonstrated any error in the ALJ's evaluation of these medical source opinions.

---

[6] Although the ALJ did not mention Dr. Bordini by name in the opinion, it is apparent that the ALJ discussed Dr. Bordini's neurological consultation of Plaintiff when the ALJ referenced "an independent neuropsychological consultation . . . at the request of the claimant's workers' compensation carrier." (T 25) Dr. Bordini's evaluation expressly refers to the workers' compensation case. (T 389, 390)

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED**:

(1) the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida this 8th day of February, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge